**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PEDRO ISAAC CATAGNA VEGA,**<br>***Petitioner,***<br><br>**v.**<br><br>**JL JAMISON, in his official capacity as Warden of Federal Detention Center in Philadelphia, et al.,**<br>***Respondents.*** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br><br><br><br>**No. 26-cv-7418** |

**MEMORANDUM**

**KENNEY, J.** **OCTOBER 8, 2026**

Before the Court is Petitioner Pedro Isaac Catagna Vega's Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1). Petitioner seeks immediate release from detention pursuant to 28 U.S.C. § 2241. ECF No. 1 at 1. Respondents oppose any relief. *See* ECF No. 9. For the reasons set forth below, the Court will **GRANT** the Petition (ECF No. 1), and order Respondents to immediately release Petitioner from detention.

## I. BACKGROUND

Petitioner is a citizen of Ecuador, who entered the United States in January 2021. ECF No. 1 ¶¶ 3, 19. Petitioner does not have any "outstanding criminal warrants or convictions[.]" *Id.* at 2; *see also* ECF No. 9-2 at 4. On September 23, 2026, Petitioner was arrested and detained by officers of U.S. Immigration and Customs Enforcement ("ICE"). *See* ECF No. 1 at 2; *see also* ECF No. 9-2 at 3. ICE officers did not have a Form I-200 Warrant for Petitioner's arrest when they arrested and took him into custody. *See* ECF No. 9 at 2 n.1. Instead, a Warrant was generated and executed *after* Petitioner was arrested and already in custody, though Respondents represent that the Warrant was "generated and served" at the scene of arrest. *See id.* (quoting ECF No. 9-2 at 3). Respondents indicate that Petitioner was a "target[]" of an operation at the time that he was

arrested. *See id.* at 4; *see also* ECF No. 9-2 at 3. The Petition followed. *See* ECF No. 1. Petitioner argues that after the Third Circuit's decision in *Buele Morocho v. Warden Philadelphia FDC*, Nos. 26-1150 & 26-1454, --- F.4th ----, 2026 WL 2546223 (3d Cir. Aug. 28, 2026), it is clear that the authority to detain Petitioner arises from 8 U.S.C. § 1226(a), which contains certain statutory and due process protections. *See* ECF No. 1 ¶¶ 27–28; *id.* at 3. Respondents confirm that Petitioner was detained under 8 U.S.C. § 1226(a). *See* ECF No. 9 at 2.

## II. LEGAL STANDARD

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Habeas is at its core a remedy for unlawful executive detention[,]" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and is "regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded by statute on other grounds*. It is Petitioner's burden to demonstrate that he is being detained in violation of the Constitution or federal law. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941). In addition, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings. *See Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.").

## III. DISCUSSION

Petitioner argues that he is being unlawfully detained in violation of the Due Process Clause, the Immigration and Nationality Act ("INA"), bond regulations, and the Administrative Procedure Act ("APA"). ECF No. 1 ¶¶ 21–38. For similar reasons as were recently articulated in

*Tabora-Brizuela v. Mullin*, No. 26-7010, 2026 WL 2908095, at *2–5 (E.D. Pa. Sept. 28, 2026), and as this Court discussed in *Juarez v. Mullin*, No. 26-cv-7008, 2026 WL 2981947, at *2–5 (E.D. Pa. Oct. 5, 2026), the Court finds that Petitioner is being detained in violation of the INA and the Constitution. Accordingly, habeas relief is warranted, and the Court will order Petitioner's immediate release.

**A. Administrative Exhaustion**

Before seeking judicial relief, habeas petitioners "are ordinarily required to exhaust their administrative remedies." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases); *see also Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) ("Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241." (collecting cases)). However, exhaustion can be excused in circumstances where (1) exhaustion "would be futile[;]" (2) "the actions of the agency clearly and unambiguously violate statutory or constitutional rights[;]" or (3) "if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). "[T]he exhaustion doctrine is not supposed to preclude judicial relief[.]" *Id.*

Under the circumstances of this particular case, exhaustion "would be futile" and the actions of ICE "clearly and unambiguously" violated Petitioner's statutory and constitutional rights. *Id.* As relevant here, "[a] later bond hearing does not necessarily cure the alleged constitutional violation that preceded it." *Dos Reis v. McShane*, No. 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (collecting cases). Respondents do not dispute that a Warrant for Petitioner's arrest was not generated until after he had already been arrested and placed in custody, *see* ECF No. 9 at 2 n.1, so requiring a bond hearing at this posture would be futile in remedying

Petitioner's current unlawful detention. *See Dos Reis*, 2026 WL 1746649, at *3; *see also Melendez-Guzman v. Jamison*, No. 26-7556, 2026 WL 2983704, at *3 (E.D. Pa. Oct. 5, 2026) ("Petitioner alleges that he is *currently* being deprived of liberty unlawfully, so administrative processes such as a bond hearing that may become available in the future would be futile in remedying Petitioner's alleged present and ongoing constitutional deprivation."). Furthermore, requiring the Court to defer until a bond hearing is held and an appeal has been heard before the Board of Immigration Appeals would simply delay adjudication of a "clear[] and unambiguous[]" violation of Petitioner's statutory and constitutional rights. *Lyons*, 840 F.2d at 205; *see also Tabora-Brizuela*, 2026 WL 2908095, at *5 ("[U]sing an after-the-fact warrant to justify a prior arrest . . . is statutorily prohibited under the INA." (quoting *Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 410 (E.D.N.Y. 2026))). Accordingly, the Court will excuse exhaustion here.

**B. Immigration and Nationality Act**

Section 236(a) of the INA provides that "*[o]n a warrant* issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). "The language of this provision is clear: Section 236(a) 'requires a warrant for arrest'" and detention. *Tabora-Brizuela*, 2026 WL 2908095, at *2 (quoting *Hernandez v. Blanche*, No. 26-6195, 2026 WL 2569475, at *3 (E.D. Pa. Aug. 31, 2026) (collecting cases)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that Section 1226(a) "authorizes detention [under that section] only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest" (quoting 8 U.S.C. § 1226(a))); *Sagbay v. Jamison*, No. 26-7265, 2026 WL 2875765, at *5 (E.D. Pa. Sept. 24, 2026) ("Section 1226(a) is not even triggered unless an arrest warrant is issued. . . . If the alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion

to detain or release the arrested alien are likewise not triggered." (internal quotations and citation omitted)); *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 n.4 (BIA 2025) ("The regulation implementing DHS' authority to conduct arrests under section 236(a) authorizes a prospective arrest and contemplates that the subject of the warrant has not yet been arrested and taken into custody at the time the warrant is issued." (citation omitted)).

Respondents concede that ICE did not have a warrant for Petitioner's arrest at the time that they arrested him and note that "[t]his case is not factually distinguishable" from this Court's decision in *Juarez*. *See* ECF No. 9 at 2 n.1. Rather, a Form I-200 Warrant "was generated after Petitioner was arrested" and in custody, though the Warrant was served at the scene of the arrest. *Id.*; *see also* ECF No. 9-2 at 3. It follows, therefore, that "[o]n its face . . . Section 236(a) does not provide a basis for the Government to hold Petitioner in custody" because he was not arrested and detained on a warrant. *Tabora-Brizuela*, 2026 WL 2908095, at *2; *see also Sagbay*, 2026 WL 2875765, at *5 (same); *Melendez-Guzman*, 2026 WL 2983704, at *6 (same).

Section 287(a) of the INA gives ICE "limited authority to make warrantless arrests" where they can demonstrate "'probable cause'" for the arrest and that the noncitizen "'is likely to escape before a warrant can be obtained.'" *See Tabora-Brizuela*, 2026 WL 2908095, at *2 (first quoting *Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979); then quoting 8 U.S.C. § § 1357(a)(2)); *see also* 8 U.S.C. § 1357(a)(2) (explaining that officers have the authority to arrest a noncitizen "without warrant" if the officer "has reason to believe that the [noncitizen] so arrested is in the United States in violation of" certain immigration "law[s] or regulation[s] and is likely to escape before a warrant can be obtained for his arrest"); 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

The Government has not put forth adequate factual findings suggesting that ICE had the legal authority to proceed with a warrantless arrest of Petitioner. Although the Form I-213 that ICE officers filled out after Petitioner's arrest indicates that when they pulled Petitioner over on September 23, 2026, he was the target of an enforcement operation, it is not clear in the record before the Court *why* Petitioner was a target. *See* ECF No. 9-2 at 3. Moreover, if Petitioner was an active target of the operation, that begs the question as to why ICE officers did not already have a warrant in hand when carrying out the operation and stopping Petitioner, which further begs the question as to whether there was any basis for probable cause. "Information that [an] officer learns after an arrest cannot justify a warrantless arrest, as an officer cannot form a belief about probable cause based on information they do not know." *Tabora-Brizuela*, 2026 WL 2908095, at *2 (citing *Henry v. United States*, 361 U.S. 98, 102–04 (1959)). Nor is there any indication in the arrest narrative that the ICE officers had "reason to believe" that Petitioner was "likely to escape before a warrant [could] be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). Rather, the Form I-213 indicates that Petitioner stopped when ICE officers activated their emergency lights, and there is no suggestion that he attempted to flee. ECF No. 9-2 at 3. Thus, the record before the Court does not support a finding that Section 1357(a)(2) provides a basis for Petitioner's arrest and detention. *See Melendez-Guzman*, 2026 WL 2983704, at *6; *Juarez*, 2026 WL 2981947, at *3.

As the *Tabora-Brizuela* Court emphasized, "[p]ost-hoc warrant practice is by any measure 'constitutionally problematic[,]'" and permitting "the Government to launder an unlawful arrest through a post-hoc warrant would greenlight authorities to make baseless arrests and conjure a reason to hold them later." 2026 WL 2908095, at *5 (quoting *Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 410 (E.D.N.Y. 2026)); *see also Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1226 (D. Colo. 2025) (finding that "the *post hoc* warrants" that were issued "had no legal effect").

Accordingly, for these reasons, Petitioner's detention pursuant to a warrantless arrest violates the INA, which is "grounds for habeas relief." *Tabora-Brizuela*, 2026 WL 2908095, at *3; *see also Melendez-Guzman*, 2026 WL 2983704, at *6 ("[B]ecause Petitioner's detention did not occur either '[o]n a warrant issued by the Attorney General' or with 'reason to believe that [Petitioner] . . . [was] likely to escape before a warrant [could] be obtained for his arrest,' it was unlawful under both § 1226(a) and § 1357(a)(2), in addition to violating procedural due process"); *Juarez*, 2026 WL 2981947, at *3 (same); *Sagbay*, 2026 WL 2875765, at *5 (same).[1]

**C. Due Process Clause**

In addition, Petitioner argues that his detention violates his procedural due process rights.[2] The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases). To determine if Government action violates procedural due process, courts weigh the following factors as set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and

---

[1] Respondents argue that "Petitioner does not argue the legality of his arrest in his Petition." ECF No. 9 at 2 n.1. Not so. Petitioner presents various arguments throughout his Petition as to why his arrest and detention are unlawful. Although Petitioner did not initially raise the issue of being subject to a warrantless arrest, that issue has now been placed affirmatively before the Court. *See id.*

[2] The Court need not address whether Petitioner's detention violates bond regulations or the APA.

administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

The first *Mathews* factor weighs strongly in Petitioner's favor. He has a private interest "in being free from physical detention" and "'[i]t is clear that commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529–30 (2004) (plurality opinion) (quoting *Jones v. United States*, 463 U.S. 354, 361 (1983)); *see also Zadvydas*, 533 U.S. at 690 (explaining that being free from physical detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Since Respondents have detained Petitioner under Section 1226(a), he "is owed the process due under that statute[,]" which did not occur here as discussed above. *Tabora-Brizuela*, 2026 WL 2908095, at *3 (internal quotations and citation omitted).

The second *Mathews* factor also weighs in Petitioner's favor. There is a significant "risk of an erroneous deprivation" when ICE acts to detain an individual under Section 1226(a) without first determining whether there is a legitimate reason for doing so or sufficient time to secure a warrant, and without complying with applicable statutory and administrative regulations. *See Mathews*, 424 U.S. at 335; *see also Tabora-Brizuela*, 2026 WL 2908095, at *4 ("[T]he risk of erroneous deprivation is significant when officers act without forethought and deliberation."); *Torres Guevara v. Warden of Fed. Det. Ctr. Phila.*, No. 26-7077, 2026 WL 2838542, at *4 (E.D. Pa. Sept. 22, 2026) ("There is a high risk of erroneous deprivation where the government physically detains a person without identifying a valid reason to do so."); *Yeleshev v. Larocco*, No. 26-CV-2294, 2026 WL 1353806, at *3 (E.D.N.Y. May 14, 2026) ("[W]hen someone is arrested first, and the reasons located later, there is an inevitable pressure to 'justify' or find some legal

basis for removal proceedings, which heightens the risk of error and in other cases, something far worse.”).

With respect to the third *Mathews* factor, the Court acknowledges that Respondents have a valid interest in enforcing immigration laws and protecting the public from danger. However, at the same time, Respondents and ICE also have an interest in and an obligation to abide by the rule of law and follow applicable statutory provisions and regulations when carrying out their official duties. *See* 8 U.S.C. § 1226(a); *id.* § 1357(a); 8 C.F.R. § 287.8(c)(2)(ii). Requiring compliance with these provisions certainly “does not amount to a detrimental ‘burden’” on Respondents. *Tabora-Brizuela*, 2026 WL 2908095, at *4. Indeed, “the mere fact that the [G]overnment has the authority to detain someone does not mean that it may do so in any manner it chooses, without affording due process.” *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025) (citation omitted); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (explaining that when “the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures”); *Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988) (explaining that “principles of due process require an agency to follow its own regulations, which have the force of law”); *Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991) (“The notion of fair play animating [the Fifth] [A]mendment precludes an agency from promulgating a regulation affecting individual liberty or interest, which the rule-maker may then with impunity ignore or disregard as it sees fit.”). Accordingly, this factor, too, weighs in Petitioner’s favor.

On balance, the Court finds that the *Mathews* factors weigh in favor of a determination that Petitioner’s warrantless arrest and detention have resulted in a violation of his procedural due process rights, which is an additional ground for habeas relief. *See Tabora-Brizuela*, 2026 WL 2908095, at *4; *Juarez*, 2026 WL 2981947, at *5.

**D. Remedy**

Respondents have violated both the INA and Petitioner's procedural due process rights. Accordingly, Petitioner is being held "in custody in violation of the Constitution [and] laws . . . of the United States." 28 U.S.C. § 2241(c)(3). A federal court adjudicating a petition for a writ of habeas corpus is authorized to "dispose of the matter as law and justice require[,]" *see id.* § 2243, and has "equitable discretion to decide whether to issue the writ or to provide a remedy." *Edwards v. Vannoy*, 593 U.S. 255, 289 (2021) (Gorsuch, J., concurring). "The traditional function of the writ of habeas corpus is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf*, 553 U.S. at 693). As in *Tabora-Brizuela*, immediate release from detention is also warranted in this case. 2026 WL 2908095, at *5; *see also Sagbay*, 2026 WL 2875765, at *5–6 (ordering immediate release of a petitioner where he was arrested and detained "without an administrative warrant"); *Melendez-Guzman*, 2026 WL 2983704, at *7 (same); *Juarez*, 2026 WL 2981947, at *5 (same). This "remedy aligns with numerous cases releasing habeas petitioners held in custody following procedural due process violations." *Funes v. Francis*, 810 F. Supp. 3d 472, 502 (S.D.N.Y. 2025) (collecting cases).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Petition (ECF No. 1), and order Respondents to immediately release Petitioner from detention and to certify their compliance with the Court's Order. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**